UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PETER M. QUINT,                          6:11-CV-6371-TC

                Plaintiff,

      v.                                           ORDER

UNIVERSITY OF OREGON; CYNTHIA
ANDERSON; KATHY ROBERTS; and
MICHAEL BULLIS,

                Defendants.

COFFIN, Magistrate Judge:

    Presently before the court is defendants' motion (#19) for summary judgment. Plaintiff concedes much of the motion, but contends that a claim for a violation of his First Amendment right to freedom of speech survives and that a federal student- to- teacher hostile work environment claim also survives.

    For the reasons stated below, the motion for summary judgment is allowed and this action is dismissed.

//

Page 1 - ORDER

## Factual Background

Plaintiff taught at defendant University of Oregon as an instructor of American Sign Language (ASL) in the College of Education. The University hired plaintiff as a non-tenured instructor and had the option to renew his contract on an annual basis.

Plaintiff's appointment was renewed for the 2010-2011 academic school year. Thereafter, plaintiff began having difficulties with a group of students in one of his classes. These students had issues with plaintiff's teaching style and would talk during class. Plaintiff had a "voices off" policy in which he expected students to immerse themselves in the deaf culture by using sign language only during portions of the class. Plaintiff's "voices off" policy was similar to that of a Spanish instructor requiring students to speak Spanish only during class and is common in other foreign language classes.

Although a seating chart suggested by a supervisor was effective for a time, the same group of students that had been disruptive during the Fall and Winter terms continued with their behavior in the Spring term which resulted in conflicts between these students and other students in the class. On May 4, 2012, plaintiff began his class by telling a story about why he taught ASL and about time he spent in Pakistan that taught him to respect different cultures. Plaintiff testified in deposition that the point of the story was to show the importance of respecting people of different cultures and to beware of behaviors that show a lack of respect. The class took place only days after Navy SEALS had infiltrated Osama Bin Laden's compound in Pakistan and the event was used as a springboard for plaintiff to tell his students about the trip he took to Pakistan. During that trip, plaintiff encountered tribesmen carrying AK-47 assault rifles. Although he was scared, plaintiff chose to respect the customs of the tribesmen and treated them with the utmost respect. Plaintiff told

the class that what kept it from becoming a dangerous situation was communication. He informed the students that had he behaved or had the attitude that he could do whatever he wanted he would have been beaten, killed, or run out. The point of the story, according to plaintiff, was for students to recognize that they needed to respect plaintiff's "voices off" policy much like he respected the tribesmen and their culture. (Quint Depo., Exhibit 19).

After discussing the Pakistan experience, plaintiff went on to review a test that he had the students take in a prior class. While reviewing the test, plaintiff expected the students to respect his "voices off" policy. However, from listening to the audio from the videotaped class one can hear students talking while plaintiff was reviewing the tests. At around the 39th minute mark of the tape, the talking became excessive and plaintiff said to the entire class:

> Do I hear voices; ( pause); why are you talking to each other? <u>Do you want me to take out a gun and shoot you in the head?</u> When I was in Pakistan I had to take myself out of my self: I had to take myself out of myself; OK; and I had to say, oh I can't do that; had I ; had I, broken, you know; broken the expectation, I probably would be dead by now; you make comments to each other about something that I know you're going to have a dispute with me about, make it accessible to me.

Quint Depo., Exh 19(emphasis supplied).

Shortly after making this comment the class concluded. Later in the day, Dean Michael Bullis emailed plaintiff informing him that he was investigating the comment made by plaintiff during class and that he was suspended from teaching –at least for Thursday, May 5, 2011.

Bullis reviewed the recording of the class on the afternoon of May 4, 2011. However, he did not watch the entire video; rather he skipped through parts until he got to the point where plaintiff made his comment. At the time Bullis suspended plaintiff, he was well aware of problems plaintiff was having with students talking during his class.

Page 3 - ORDER

Bullis also received a call from an angry father who reported that his daughter had mentioned plaintiff's comment about shooting students in the head and that he was concerned for safety. Some students contacted the Department of Public Safety (DPS)expressing that they were not sure what plaintiff was capable of and were uncomfortable returning to his class.

On May 5, 2011, Bullis and two officers from the DPS attended classes to discuss the incident that occurred the day before. DPS concluded that no crime had been committed. The DPS report notes identify a number of students that did not feel threatened at all by plaintiff's comment and believed the statement was taken out of context.

Bullis did not interview plaintiff. On May 5, 2011, Bullis notified plaintiff that he was suspended from teaching for the comment made during the May 4, 2011 class. On May 11th, Bullis suspended plaintiff with pay for the remainder of the year and informed plaintiff that his teaching contract would not be renewed.

Quint stated in deposition that the statement was made in frustration and that he was upset and that his statement was inappropriate.

## **Legal Standard**

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477

Page 4 - ORDER

U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. Id.

## Discussion

### First Amendment Claim

It is well settled that the state may not abuse its position as employer to stifle "the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009), citing Pickering v. Bd of Education, 391 U.S. 563, 568 (1968). The speech at issue here, however, does not at all fit in that category. It is beyond dispute that the plaintiff was speaking not as a "private citizen" nor "on a matter of public concern."

The plaintiff bears the burden of showing the speech was spoken in the capacity of a private

Page 5 - ORDER

citizen and not as a public employee. "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, <u>or if the speech was not the product of performing the tasks the employee was paid to perform.</u>" Eng, supra, at 1071 (emphasis supplied). Here it is cleat that plaintiff's speech was made in the course of performing his duties as an instructor in the ASL class – i,e,, in his capacity as a public employee.

In addition, nothing in the speech at issue can be described as a matter of public concern. "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social or other concern to the community. '" <u>Johnson v. Multnomah County, Or.</u> 48 F.3d 420, 422 (9th Cir. 1995) (quoting <u>Connick v. Meyers</u>, 461 U.S. 138, 146 (1983). At best, plaintiff's speech was an effort to enforce compliance with his "voices off" policy in his class. More to the point, its content included an admittedly inappropriate remark ("Do you want me to take out a gun and shoot you in the head?") that is expressly threatening in nature and which evoked reasonable apprehension among students and at least one parent, as well as campus security. As noted in <u>Planned Parenthood v. Amer. Coalition of Life</u>, 290 F.3d 1058, 1077 (9th Cir. 2002), a threatening statement is unprotected under the First Amendment. At any rate, regardless of whether plaintiff's reference to taking out a gun qualifies as a "true threat" under <u>Planned Parenthood</u> and other precedent[1], it easily falls far short of the mark of speech that enjoys protection because it involves a matter of public concern. See, e.g., <u>Martin v. Parrish</u>, 805 F.2d 583 (5th Cir.1986) (college teacher had no First Amendment right to use profane language in classroom). Plaintiff strains to connect the statement which caused the Dean to place him on administrative leave and ultimately not to renew his contract ("Do you want me to take out a gun and shoot you in the head?")

---

[1] <u>See</u>, United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990).

Page 6 - ORDER

with his speech regarding respecting those of different cultures. But, it is clear that the Dean did not retaliate against him for advocating respect for those of diverse cultures. Plaintiff simply crossed the line with his remark referencing the possibility of using a gun to shoot the disruptive students, and there was nothing about that statement that invoked protection under the First Amendment. As Martin v. Parrish, supra, instructs, had plaintiff responded to the disruptive students by shouting profanities at them, such would not be protected speech. If anything, plaintiff's remark – especially given the well-known tragic backdrop of school shootings that have heightened security concerns at every educational institution in the nation – merits less protection than profanity.

Hostile Work Environment Claims

Plaintiffs hostile work environment claim under the ADA is governed under the same legal standards as a hostile work environment claim under Title VII. Walton v. Mental Health Ass'n of Southeastern Pa., 168 F.3d 661, 666 (3d Cir. 1999). To establish a prima facie case of hostile work environment, plaintiff must show 1) he is a qualified individual with a disability, 2) he was subject to verbal or physical harassment because of his disability, 3) the conduct was unwelcome, and 4) the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive working environment. Id.

Although it is undisputed that plaintiff is a qualified individual with a disability (he is deaf), there is no evidence that the disruptive students violated his "voices off" policy "because of his disability." This claim thus fails on the second prong of the analysis, and there is no need to address the issue of whether the University's response to the classroom behavior was so inadequate under the circumstances as to create an abusive working environment.

//

## Conclusion

Defendants' motion (#19) for summary judgment is allowed and this action is dismissed.

DATED this 30T day of January, 2013.

```
                              _____
                              THOMAS M. COFFIN
                              United States Magistrate Judge
```